FORET, Judge.
This action arises out of a continuing guaranty agreement signed by defendant, Robert Harger, in favor of Ford Motor Credit Company (Ford Motor Credit).
FACTS
On September 15, 1980, Combined Equities, Inc. executed a promissory note in favor of Ford Motor Credit secured by an Aircraft Security Agreement of even date *587 therewith, affecting one 1980 Piper aircraft. As further security, Ford Motor Credit obtained a continuing guaranty agreement signed by Robert Jackson, E. Hardy Swyers, Glenn C. Bodin, and defendant herein, Robert Harger. Subsequent thereto, Combined Equities sold the aforesaid aircraft to API Oil Tool & Supply, Inc. (API) and the sale is evidenced by a Transfer Agreement signed by representatives of Combined Equities and API.[1] Pursuant to this agreement, API assumed all of Combined Equities’ obligations in connection with the aforesaid promissory note. The transfer agreement also provides for the consent of any guarantors, but defendant herein refused to sign this document. Thereafter, API defaulted and this litigation ensued.[2]
LOWER COURT PROCEEDINGS
Plaintiff, Ford Motor Credit, filed a motion for summary judgment against defendants, Robert Jackson, Glenn C. Bodin, Sam Connor, Combined Equities, and Robert Harger. The motion for summary judgment was granted by the trial court on September 23, 1986, but only insofar as defendants Connor and Harger are concerned. Robert Harger has devolutively appealed this judgment.[3]
ISSUES ON APPEAL
The sole issue presented for our consideration on appeal is whether or not the trial court erred in granting plaintiffs motion for summary judgment against defendant, Robert Harger.
In support of its motion for summary judgment, plaintiff filed into evidence the promissory note, security agreement, transfer agreement, and the continuing guaranty agreement signed by defendant. Defendant does not dispute the authenticity of these documents, but presents for our consideration two arguments as to why summary judgment should not have been rendered against him.
Firstly, defendant contends that, because he refused to sign the aforesaid transfer agreement, his obligation as surety was extinguished when plaintiff’s security was sold by Combined Equities to API. We disagree. La.C.C. art. 3061 provides as follows[4]:
“Art. 3061. The surety is discharged when by the act of the creditor, the sub-rogation to his rights, mortgages and privileges can no longer be operated in favor of the surety.”
The simple transfer of property subject to a mortgage does not, in and of itself, prejudice the rights of a surety thereby extinguishing his obligation as surety. Patterson-Redmond Equipment, Inc. v. Martin, 166 So.2d 65 (La.App. 4 Cir.1964), writ denied, 167 So.2d 673 (1964). In Patterson, defendant, Milan, endorsed Martin’s note which was also secured by a collateral mortgage on a piece of heavy equipment. Thereafter, Milan approved the sale of the equipment to Kennedy but refused to endorse a new note to be signed by Kennedy as maker. Thereafter, the equipment was sold to Kennedy, with Kennedy simply assuming Martin’s note and chattel mortgage. Milan contended that the sale of the mortgaged property under such circum *588 stances extinguished his obligation as surety. In holding that Milan remained liable as surety, the court stated the following:
“There was no release of Martin or of the collateral securing the note. The security was always available to Milan for seizure, had he elected to pay the note and become subrogated. At the time of trial the security was being preserved in the parish where suit was filed. Rather than being prejudiced, Milan’s position was improved by the transfer to Kennedy since he gained an additional obligor on the note, without losing any rights against the maker.” Patterson, at pg. 67.
We find this case to be persuasive. The sale of the aircraft in the instant case did not prejudice defendant’s rights in any way. Up until the time the aircraft was sold at sheriff’s sale, this security was available to defendant had he elected to pay the indebtedness and thereby become subrogated to the plaintiff’s rights. As was the case in Patterson, defendant’s position was, if anything, improved by the transfer in that additional obligors were gained by this transaction. Moreover, we should point out that the continuing guaranty agreement signed by defendant states that he “unconditionally” guarantees performance by the obligor. It further states as follows:
“This guaranty may be terminated only by notice sent to you [Ford Motor Credit Company] by registered mail, stating an effective date after the receipt of such notice by you; but shall continue thereafter as to each of the undersigned who or which has not given such notice, and shall continue as to each of the undersigned giving such notice with respect to any transaction with and any obligation of the Obligor incurred prior to the effective date of termination. No termination hereof shall be effected by the death of any of the undersigned. Each of the undersigned waives notice of acceptance hereof and of presentment, demand, protest and notice of non-payment or protest as to any note or obligation signed, accepted, endorsed or assigned to you by the Obligor, and all exemptions, rights of dower and homestead laws and any other demands and notices required by law, and waives all set-offs and counterclaims. You may renew, extend, modify or transfer any obligations of the Obligor or of its customers or of co-guarantors, may accept partial payments thereon or settle, release, compound, compromise, collect or otherwise liquidate any obligation or security therefor in any manner and bid and purchase at any sale without affecting or impairing the obligation of any of the undersigned hereunder.”
Pursuant to this provision, plaintiff was free to deal with its security in the manner in which it did without affecting the rights of its guarantors. We therefore find defendant’s first argument to be without merit.
Secondly, defendant argues that by refusing to sign the transfer agreement, he effectively notified plaintiff of his decision to withdraw as surety for Combined Equities and thereby relieved himself of any liability for those debts, including the one sued upon, which were not in default as of the date of his withdrawal. The continuing guaranty agreement provides that a guarantor may terminate his obligations thereunder by notice sent via registered mail. Defendant contends that his refusal to sign the transfer agreement was sufficient notice under the contract even though no written notice was sent by registered mail to plaintiff. We find it unnecessary to reach this issue because, even if this were the case, the continuing guaranty agreement clearly states that, in such event, the guarantor’s liability shall continue “with respect to any transaction with and any obligation of the Obligor incurred prior to the effective date of termination.” The indebtedness sued upon was incurred prior to the date of the defendant’s alleged notice and therefore his obligation as surety was not affected thereby.
In summation, we find both arguments submitted by defendant on appeal to be without merit, and we agree with the trial court’s finding that there is no genuine issue of material fact in this case and that *589 plaintiff is entitled to judgment as a matter of law. We therefore affirm the judgment of the trial court and order all costs of this appeal to be paid by defendant, Robert Harger.
AFFIRMED.

. In connection with this transfer, plaintiff obtained a second continuing guaranty agreement dated January 26, 1982, signed by Charles F. Haynes and Sam Connor.

. The 1980 Piper aircraft was sold at sheriffs sale on March 6, 1985 for $51,396.90, and this credit is noted in the judgment of the trial court.

. The petition filed by Ford Motor Credit names Robert Jackson, E. Hardy Swyers, Glenn C. Bo-din, Charles F. Haynes, Sam Connor, API Oil Tool & Supply, Inc., Combined Equities, Inc., and Robert Harger as defendants. Although the motion for summary judgment was denied insofar as they were concerned, a separate judgment has been rendered by the trial court against defendants Jackson, Bodin and Combined Equities, Inc. on September 15, 1986. Prior thereto, the trial court rendered judgment against defendants, Haynes and API Oil Tool & Supply, Inc. There is no record of a judgment against Swyers. This appeal involves only the judgment rendered against Robert Harger on September 23, 1986.

.This article was repealed by Acts 1987, No. 409, § 1, effective January 1, 1988. For treatment of the subject matter of this article, see now Civil Code art. 3062.